**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MARC BARNES, individually and on behalf of all others similarly situated,**<br>***Plaintiff,***<br>**v.**<br>**NIKON INC.**<br>***Defendant.*** | **COMPLAINT – CLASS ACTION**<br>Case No.:____________________<br>**JURY TRIAL DEMANDED** |

Plaintiff Marc Barnes ("Plaintiff"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant Nikon Inc., ("Defendant" or "Nikon") and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1. For approximately one year, the federal government charged tariffs on certain products, including consumer goods, imported into the United States under the International Emergency Economic Powers Act ("IEEPA").

2. For businesses with international supply chains, absorbing IEEPA tariffs was costly. Nikon publicly disclosed the company anticipated annual cost increases from new tariff rates.

3. Many businesses, including Nikon, responded to the high cost of IEEPA tariffs by passing those tariffs through to consumers in the form of discrete, identifiable charges. In effect, this meant that it was consumers, not Nikon, who paid the IEEPA tariffs.

4. On February 20, 2026, the Supreme Court of the United States held that those tariffs were not authorized by IEEPA and were thus illegal.

5. Following the Supreme Court's decision, businesses sought to recover the IEEPA tariffs they paid through initiating litigation in the International Court of Trade. In response, the U.S. Customs and Border Protection ("CBP") announced a process to streamline refunds to businesses and other entities that paid IEEPA tariffs. However, no such process has been initiated to ensure that the companies who passed on the cost of IEEPA tariffs would refund consumers who actually paid them.

6. In this case, the individuals that ultimately paid the IEEPA tariffs were undisputedly the consumers. Consequently, those consumers are entitled to a refund of the tariffs that the Supreme Court ruled were illegal when charged.

7. While Nikon is able to recover refunds for the IEEPA tariffs it paid, Nikon has not made any legally-binding commitment to return the same IEEPA tariffs it passed through to the consumers who bore the brunt of the illegal IEEPA tariffs.

8. Unless restrained by this Court, Nikon will get paid the same tariff payments twice, once from consumers and again from the federal government through tariff refunds (including interest). Without a refund of IEEPA tariffs to consumers, Nikon will be eligible for a refund of IEEPA tariff fees it never paid.

9. This action presents an actual, concrete controversy that is ripe for adjudication. Nikon collected IEEPA tariffs that were never lawful from consumers like Plaintiff and Class members. Nikon has been and will continue to be refunded by the government for the IEEPA tariffs that Plaintiff and Class Members already paid. Thus, Nikon has been and will continue to be enriched at the expense of Plaintiff and Class Members. As such, Plaintiff and Class Members

are entitled to reimbursement of all tariffs and tariff-related fees Nikon unlawfully charged, plus interest.

**PARTIES, JURISDICTION & VENUE**

10. Plaintiff Marc Barnes is a resident of the State of North Carolina. Plaintiff Barnes purchased an item from Nikon that was subject to an increased price that was directly tied to IEEPA tariffs that Nikon paid and passed through to him.

11. Defendant Nikon Inc. is a corporation with its principal place of business in New York. Nikon is responsible for the pricing, marketing, distribution, and sale of its products in the United States. Nikon develops, designs, manufactures, and sells photography and medical imaging equipment, among other things. A significant portion of the products Nikon sells are imported goods subject to IEEPA tariffs imposed by the United States government. The decision to pass on illegal IEEPA tariffs to consumers arose out of Nikon's presence in New York. Nikon Inc., is a wholly owned subsidiary of Nikon Corporation.

12. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

13. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendant's obligation to return to the consumers who paid them the IEEPA duties and fees Defendant collected, as well as any IEEPA duty refunds Defendant recovers from the United States.

14. This Court has personal jurisdiction over Defendant, because its principal place of

business is in this District. Defendant has also purposefully availed itself of the laws, rights, and benefits of the State of New York.

15. Venue is proper under 28 U.S.C. § 1391 because Defendant maintains a principal place of business in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in and emanated from this District.

## FACTUAL ALLEGATIONS

### A. Nikon's Business Relies on International Supply Chains

16. Nikon is one of the largest suppliers of photographic and medical imaging equipment in the world.

17. Nikon generates roughly $4.3 billion (677.1 billion yen) in sales worldwide.

18. Nikon markets its cameras and lenses to a wide range of consumers, from amateur hobbyists to seasoned professionals.

19. In order to maintain a competitive edge, Nikon maintains an international supply chain that includes factories in China, Thailand, Japan, and Laos.

20. Imported goods therefore account for most, if not virtually all, of Nikon's retail sales in the United States. Because Nikon imports most if not all of the goods it sells to the US consumers, Nikon is particularly sensitive to any tariffs that could increase its cost of importing merchandise into the United States.

21. Nikon sells to consumers directly and through its authorized dealer network. To be an authorized dealer, a retailer must agree to, among other things, set a minimum advertised price ("MAP") for Nikon's products. Nikon's authorized dealers agree not to advertise and sell a Nikon product below the MAP, meaning that Nikon is able to control the prices that consumers pay.

**B. IEEPA Tariffs Impacted Companies, Like Nikon, with International Supply Chains**

22. Beginning in February 2025, President Donald J. Trump unilaterally issued a series of executive orders invoking the IEEPA to impose new tariffs on goods imported from numerous foreign countries. These included 25% tariffs on Canadian and Mexican imports and escalating tariffs on Chinese imports. *See* Exec. Order 14193, 90 Fed. Reg. 9113 (Feb. 1, 2025); Exec. Order 14194, 90 Fed. Reg. 9117 (Feb. 1, 2025); Exec. Order 14195, 90 Fed. Reg. 9121 (Feb. 1, 2025); Exec. Order 14228, 90 Fed. Reg. 11463 (Mar. 3, 2025).

23. The IEEPA authorizes the president to "regulate . . . importation" when faced with an "unusual and extraordinary threat" to American national security. 50 U.S.C. §§ 1702(a), 1702(a)(1)(B).

24. President Trump invoked the IEEPA on the grounds that drug trafficking and trade deficits purportedly presented unusual and extraordinary threats.

25. On April 2, 2025, the President issued an Executive Order invoking the IEEPA to impose a 10% tariff on nearly all other imports under the "reciprocal tariff" order, with rates ranging from 11% to 50% on certain countries. Exec. Order 14257, 90 Fed. Reg. 15041 (Apr. 2, 2025).

26. On April 2, 2025, President Trump signed another Executive Order eliminating the *de minimis* exemption for goods originating from China and Hong Kong, effective May 2, 2025. Beginning on that date, all imports from China and Hong Kong, regardless of value, became subject to applicable duties, taxes, and fees–including IEEPA tariffs. Exec. Order 14256, 90 Fed. Reg. 14899 (Apr. 2, 2025).

27. As a result, every shipment, regardless of its value, country of origin, mode of transportation, or method of entry, was then subjected to duties and taxes —including the illegal IEEPA tariffs.

28. The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that rely heavily on international supply chains to source merchandise—like Defendant Nikon.

29. Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major retailers such as Nikon—were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered merchandise into the country.

30. The IEEPA tariffs were never intended to serve as sources of profit for businesses.

**C. IEEPA Tariffs are Borne by Consumers**

31. As Nobel-Prize winning economist Dr. Milton Friedman famously quipped, tariffs act as a consumption tax that "protects the consumer against low prices."

32. Dr. N. Gregory Mankiw, Harvard economics professor and former Chairman of the Council of Economic Advisers under President George W. Bush stated "[t]ariffs are paid by domestic consumers, not by foreign exporters..."

33. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[1]

34. The Federal Reserve has extensively studied the impact of tariffs on consumers. The Federal Reserve Board found that anticipated tariff costs would materially increase consumer

[1] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

prices and that "pass-through from the 2025 tariffs is effectively complete," meaning the costs of the tariffs would ultimately be borne by purchasers through higher prices.[2]

35. The Federal Reserve Bank of Dallas, reviewing the realized impacts of the 2025-2026 tariffs, concluded that increased tariffs led to increased prices.[3] This means that businesses were directly passing on the discrete cost of tariffs onto consumers in the form of increased prices of goods sold. In other words, businesses like Nikon act as conduits in collecting tariffs from consumers to pay CBP.

36. The Federal Reserve Bank of Dallas' conclusion is no surprise. When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs.

37. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[4] Companies generally and necessarily consider tariffs to be costs that are to be incorporated into the pricing structure.

38. Other sources place the rate that tariffs were passed through to consumers as high as 96%, meaning that for every dollar that companies paid in tariffs, they were able to pass 96 cents of that increased cost to consumers.[5]

---

[2] Robert Minto *et al.*, Detecting Tariff Effects on Consumer Prices in real Time - Part II (April 8, 2026), *available at* https://www.federalreserve.gov/econres/notes/feds-notes/detecting-tariff-effects-on-consumer-prices-in-real-time-part-II-20260408.html

[3] *See* Ron Mau & Tucker Smith, Effects of Realized Tariff Changes on PCE Prices Peaked in First Quarter 2026, Fed. Rsrv. Bank of Dall. (May 5, 2026), available at: https://www.dallasfed.org/research/economics/2026/0505-mau.

[4] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org/2025/06/are-businesses-absorbing-the-tariffs-or-passing-them-on-to-their-customers/.

[5] Veronique de Rugy, Drop the Tariffs, Mr. President, Cato Inst.: Commentary (May 20, 2026), https://www.cato.org/commentary/drop-tariffs-mr-president. *See also* Scott Lincicome, Alfredo Carrillo Obregon & Chad Smitson, *One Year After "Liberation Day": Here's What We Know and What We Don't*, Cato at Liberty (Apr.

39. The Tax Foundation has estimated that the tariffs imposed an average cost of $1,000 on American households in 2025.[6]

40. Indeed, as detailed below, Nikon publicly acknowledged that tariffs would affect pricing decisions and the company's cost structure. In those disclosures, Nikon explained that tariffs increased the company's merchandise costs and required Nikon impose price adjustments and other operational responses designed to manage those additional expenses.

41. As a result, consumers who purchased goods from Nikon during the tariff period paid elevated prices reflecting the tariff-related cost increases incorporated into Nikon's retail pricing.

**D. Nikon Admitted IEEPA Tariff-Related Price Increases**

42. Nikon publicly acknowledged, early in the IEEPA tariff period, that IEEPA tariffs would increase its costs and place upward pressure on consumer prices.[7]

43. In Nikon's 2025 Q&A of Financial Results, Nikon disclosed that the company anticipated a "full-year impact" of approximately $63.1 million year-over-year. In this same Q&A, Nikon stated that it planned to mitigate their increased costs through price increases passed to consumers. This meant that Nikon would pass IEEPA tariff costs on to the consumer.

44. In Nikon's Q1 2026 Q&A of Financial Results Nikon revised its estimation. Nikon estimated full-year impact on "operating profit" of $47.3 million.

45. Nikon's price increases were implemented as announced. Effective approximately September 1, 2025, Nikon raised prices on various cameras, including its Z5 II by nearly 9% ($150), Z7II also by nearly 9% ($200), and Z8 by 7.5% ($300). Nikon increased its lens prices as

2, 2026), https://www.cato.org/blog/one-year-after-liberation-day-heres-what-we-know-what-we-dont.
[6] https://taxfoundation.org/research/all/federal/trump-tariffs-trade-war/
[7] *Notice Regarding Pricing Changes*, Nikon USA (May 23, 2025), https://www.nikonusa.com/press-room/notice-regarding-pricing-changes.

well. In other words, Nikon's price increases were discrete, identifiable, and directly traceable to the IEEPA tariffs.

46. Nikon increased its prices at least twice, once in June of 2025 and once in September of 2025. These were not ordinary price increases but instead directly tied to IEEPA tariffs.

47. An analysis of Nikon's price increases in June showed an average price increase for Nikon lenses of 10.5%.[8]

48. An analysis of Nikon's price increases in September showed an average price increase of 8%, including an increase of 7.5% to the MSRP of the Z8 model purchased by Plaintiff.[9]

49. Nikon's public statements and actions thus confirmed four critical points. First, IEEPA tariffs were increasing Nikon's costs on imported goods. Second, Nikon could not and did not absorb the IEEPA tariffs as part of a total or composite price. Third, Nikon directly passed the IEEPA tariffs onto its customers. Fourth, Nikon would not have raised its prices in the amount it did absent the IEEPA tariffs. Nikon's customers were paying for the IEEPA tariffs through their purchases of Nikon's goods, and that Nikon was serving as a conduit for the collection and payment of IEEPA tariffs.

50. By increasing their prices, Nikon was essentially acting as a pass-through entity, forcing consumers to pay large percentages of the illegal tariffs on its behalf.

51. Plaintiff and Class members paid tariff-inflated prices at Nikon during the Class

---

[8] Abby Ferguson, *Nikon and Canon Move Ahead with US Price Rises in Response to Tariffs*, DPReview (June 24, 2025), https://www.dpreview.com/news/1800280847/nikon-and-canon-move-ahead-with-us-price-rises-in-response-to-tariffs/.

[9] Abby Ferguson, *Tariff Watch: Nikon Implements Second Price Increase for US Customers*, DPReview (Sept. 1, 2025), https://www.dpreview.com/news/7688376775/tariff-watch-nikon-implements-second-price-increase-for-us-customers/.

Period, while Nikon now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

**E. IEEPA Tariffs Are Void *Ab Initio***

52. Numerous importers challenged the legality of the IEEPA tariffs, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.

53. The district court in *Learning Res.* granted a motion for a preliminary injunction against the enforcement of the IEEPA tariffs, a ruling that necessitated a finding of a high probability of success on the merits for the plaintiffs in that case. *Learning Res. Inc. v. Trump*, 607 U.S. 229, 239 (2026).

54. In a separate tariff case, the Court of International Trade had granted a motion for summary judgment finding the IEEPA tariffs illegal. A motion for summary judgment can only be granted where the moving party is entitled to judgment as a matter of law even if all facts are viewed in the light most favorable to the nonmoving party and there is no genuine dispute as to a material fact. *Id*.

55. The Court of International Trade ruling was later affirmed by the Federal Circuit Court of Appeals. *Id*.

56. The Supreme Court combined these cases when it ultimately heard arguments on the legality of the IEEPA tariffs. *Id*.

57. On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation. This ruling invalidated the tariff orders issued pursuant to that statute. *Learning Res*., at 229.

58. In holding that the IEEPA tariffs were illegal, the Supreme Court noted the

following:

a. The section of IEEPA cited by the government never mentions tariffs (*Id.* at 248);

b. IEEPA had never been used by any President to impose tariffs (*Id.* at 245);

c. The Constitution reserves the powers to tax and impose duties to Congress (*Id.* at 240-1); and

d. The enormous scope of the tariffs President Trump sought to impose (*Id.* at 255).

59. For each of those reasons, the Supreme Court held that IEEPA has never granted the President unilateral authority to impose tariffs, and that the IEEPA tariffs imposed by President Trump were illegal from their conception.

60. Rather than announce any prospective limitation on the imposition of IEEPA tariffs, the Supreme Court's decision declared that there was no legal basis for imposing the IEEPA tariffs. In other words, the IEEPA tariffs were unlawful from the moment they were imposed and thus unlawful when businesses like Nikon passed the tariff fees through to consumers.

**F. Nikon Received Refunds For IEEPA Tariffs It Did Not Pay, Expects to Receive More**

61. On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund suits.[10]

62. CBP developed the Consolidated Administration and Processing of Entries (CAPE) to "streamline the submission and processing of valid refund requests for duties imposed under the International Emergency Economic Powers Act (IEEPA)."[11] The CAPE process was launched on

[10] *See Atmus Filtration, Inc. v. United States*, No. 26-01259, (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.
[11] *International Emergency Economic Powers Act (IEEPA) Duty Refunds*, U.S. Customs & Border Prot., https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds (last visited Aug. 12, 2026).

April 20, 2026, and provides a way for importers of record to recover IEEPA tariffs through the submission of a spreadsheet.

63. CBP, in ordering reliquidation, did not provide a manner for consumers like Plaintiff and Class Members who ultimately paid the IEEPA tariffs to collect refunds. Instead, CBP created a refund structure that reliquidated IEEPA tariff fees to the intermediaries, like Nikon.

64. Notably, Nikon never claimed to the CBP, as a precursor to obtaining a refund, that it was owed a refund for IEEPA tariffs independent from the amounts paid by Plaintiff and Class Members, or who bore the economic burden of the IEEPA tariffs.

65. Following the Supreme Court's decision in February 2026, importers that had paid IEEPA tariffs—including Nikon—became eligible to pursue refunds of those duties.

66. Given Nikon's scale as a major importer, Nikon can expect to recover significant tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because Nikon previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Nikon now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by Plaintiff and Class members.

67. On August 6, 2026, Nikon announced to its investors that it had received about $25 million in US tariff refunds. Nikon was silent on whether it expected to receive further refunds.

68. The influx of tariff refunds allowed Nikon an unmerited business benefit.

69. In practical terms, Nikon has received a windfall: a double recovery for a single cost. Nikon has already recouped tariff costs from consumers through higher prices, and it now stands in line to recover those same unlawful tariff payments from the federal government.

## PLAINTIFF'S ALLEGATIONS

**Marc Barnes**

70. In or around October 20, 2025, Plaintiff Marc Barnes purchased a Nikon Z8 Mirrorless Camera, a Nikon NIKKOR Z 180-600mm f/5.6-6.3mm VR Lens, and a Nikon NIKKOR Z 24-120mm f/4 S Lens with a UV Filter Kit. These items were subject to IEEPA tariffs.

71. The price Plaintiff Barnes paid for this product included IEEPA tariff fees that were passed through to him by Nikon via their pricing formula.

72. Plaintiff Barnes has not been refunded the IEEPA tariff fees that he paid to Nikon. However, Nikon has received a refund from the government for IEEPA tariff fees that Plaintiff Barnes, not Nikon, paid.

## CLASS ACTION ALLEGATIONS

73. Plaintiff brings this action on behalf of himself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class is defined as follows:

> **Nationwide Class**: All persons in the United States who purchased goods from Nikon during the period from February 1, 2025 through February 24, 2026 (the "Class Period"), and were charged prices that included IEEPA tariff costs (the "Class").

74. This Nationwide Class shall be referred to herein as the "Class."

75. Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicate that the Class definition should be narrowed, expanded, or otherwise modified.

76. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

77. The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative class are also readily

identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from major retail sellers.

78. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

79. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

80. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown currently, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process.

81. **Commonality (Fed. R. Civ. P. 23(a)(2)):** There are questions of law and fact common to the Class that are capable of generating common answers, including: whether Defendant engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein; whether Defendant's conduct was unlawful, unfair, deceptive, misleading, or otherwise actionable under applicable federal and state law; whether Defendant knew or should have known of the tariffs imposed were done so unlawfully; whether Defendant's conduct caused injury to Plaintiff and Class Members; whether Defendant was unjustly enriched as a result of the conduct alleged herein; and whether Defendant is liable to Plaintiff and Class Members for damages, restitution, disgorgement, or other equitable relief.

82. **Typicality (Fed R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class Members have been injured through the uniform misconduct described above. Moreover, Plaintiff's claims are typical of the Class

Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

83. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff will fairly and adequately protect the interest of the members of the Class. Plaintiff and the members of the Class were all assessed tariffs and other collection duties as a result of the tariffs imposed by the United States pursuant to IEEPA. Plaintiff has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no antagonistic interests to those of the Class, and Defendant has no defenses unique to Plaintiff.

84. **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2))**: Defendant has acted on grounds that apply generally to the proposed Class, making declaratory and injunctive relief appropriate with respect to the proposed Class as a whole. Defendant's uniform practice of collecting tariffs imposed by the United States pursuant to IEEPA from consumers and failing to reimburse consumers for these unlawful tariffs warrants class-wide declaratory and injunctive relief.

85. **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class

Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

86. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from their unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated, making final injunctive relief appropriate with respect to the Class as a whole.

87. These common questions are capable of class wide resolution because they arise from Defendant's uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendant's liability in a single adjudication and will materially advance the resolution of this litigation.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

88. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

89. Plaintiff and the Class have made payments to Defendant to which, as between

them and Defendant, Plaintiff and the Class have a superior legal or equitable right.

90. Plaintiff and the Class conferred a benefit upon Defendant in the form of payment of IEEPA tariffs that Nikon imposed for the specific, announced purpose of recovering its IEEPA tariff costs. Nikon has now, and will continue to, recover those same costs a second time through government refunds. The benefit unjustly retained is Nikon's refund of a cost already funded by Plaintiff and the Class.

91. The IEEPA tariffs constitute an imposition or assessment collected under color of public authority. That Nikon served as an intermediary or conduit through which the IEEPA tariffs were collected is immaterial.

92. Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

93. The benefit received by Defendant came at the Plaintiff's and Class's expense, who all paid money to Defendant in the form of illegal IEEPA tariffs.

94. Defendant knowingly and voluntarily requested, received, and retained these benefits.

95. Under principles of equity and good conscience, Defendant should not be permitted to retain both the IEEPA tariffs paid by Plaintiff and the Class on the one hand, and the IEEPA tariff refunded by the government on the other. As it stands, Defendant has retained IEEPA tariff refunds (and expects to receive more) that it did not pay. Defendant's treatment of the tariff refunds concedes that it is treating the refunds as a windfall, one-time profit.

96. Plaintiff and the Class have no adequate remedy at law.

97. Equity and good conscience require that Defendant disgorges all unlawfully obtained funds and make restitution to Plaintiff and Class members.

**COUNT II**
**MONEY HAD AND RECEIVED**
**(On Behalf of Plaintiff and the Class)**

98. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

99. The Supreme Court has determined that the IEEPA tariffs were unlawful at the time they were imposed, and not prospectively after the decision was announced.

100. Defendant received money belonging to Plaintiff and each member of the proposed Class in the form of IEEPA tariffs.

101. Defendant benefited from receipt of the money in the form of IEEPA tariffs from Plaintiff.

102. In the wake of the Supreme Court's decision and the receipt of refunds for IEEPA tariffs, the money paid by Plaintiff and the proposed Class to Nikon belongs, in equity and good conscience, to Plaintiff and to each member of the proposed Class.

103. Defendant has not returned the money.

104. It will give offense to equity and good conscience if Defendant is permitted to retain the IEEPA tariff fees. Plaintiff and the putative Class seek the return of the money in an amount to be proven at trial.

105. Plaintiff seeks all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

**COUNT III**
**DECLARATORY RELIEF**
**(On Behalf of Plaintiff and the Class)**

106. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

107. An actual, justiciable controversy exists between Plaintiff and Defendant regarding the rights and obligations of the parties with respect to fees collected by Defendant from Plaintiff and Class members authorized by the IEEPA. This controversy is not hypothetical or abstract.

108. Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

a. Defendant engaged in uniform conduct of charging tariffs authorized by the IEEPA to consumers such as Plaintiff and Class Members when those tariffs and customs duties were not lawfully authorized;

b. Defendant breached duties owed to Plaintiff and Class Members;

c. Defendant knew or should have known that the tariffs and customs duties were unlawfully imposed;

d. Defendant's conduct caused injury to Plaintiff and Class Members; and

e. Defendant is obligated to return to Plaintiff and proposed Class Members all IEEPA tariffs and customs duties collected from them together with interest.

109. Declaratory relief is necessary and appropriate because Defendant collected duties and fees pursuant to tariffs that the Supreme Court has declared were never lawfully authorized and Defendant has not returned those sums to consumers who paid them. Without judicial intervention, Plaintiff and the Class have no assurance that Defendant will return the unlawfully collected sums.

110. Class members have no alternative remedy. Because Defendant served as the importer of record, only Defendant has standing to seek a refund from the government. Individual consumers cannot file suit in the Court of International Trade to recover duties they paid through Defendant. Without the declaratory relief sought in this action, Class members will be left without

any mechanism to recover the unlawful tariffs and fees they were forced to pay.

**COUNT IV**
**VIOLATION OF N.Y. GEN. BUS. LAW § 349**
**(On Behalf of Plaintiff and the Class)**

111. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

112. Nikon is a business engaged in "trade" or "commerce" within the meaning of N.Y. Gen. Bus. Law § 349.

113. Plaintiff and members of the putative class are persons who purchased Nikon photography or medical imaging equipment goods for primarily personal, family, or household purposes.

114. Nikon engaged in unlawful trade practices in connection with the sale of consumer goods, including the Nikon items purchased by Plaintiff, by: representing that the tariff-related charges assessed to consumers were lawfully authorized when they were not; passing on to consumers tariffs that are unlawful; retaining the economic benefit of those unlawful tariff charges even after seeking and obtaining a refund of the same tariff payments from the federal government; and engaging in deceptive and unfair pricing practices by presenting unlawful tariff costs to consumers as legitimate, legally mandated charges with no disclosure that those tariffs were of questionable legal validity.

115. Nikon's conduct constitutes unfair, deceptive, or abusive acts and practices in trade or commerce. Nikon engaged in unfair and deceptive acts by: (i) charging customers with discrete, identifiable, and unlawful tariffs; and (ii) retaining tariff refunds despite having passed the costs to its customers. Nikon's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.

116. Nikon knew or should have known at the time it imposed tariff-driven price increases on consumers that the IEEPA tariffs were of questionable legality. Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.

117. Even if Nikon was justified in passing through the IEEPA tariffs to Plaintiff and Class members at the time, Nikon now knows that the IEEPA tariffs were illegal when charged and should refund the additional monies paid by Plaintiff and Class members.

118. Nikon's conduct also constitutes unfair business acts and practices because it caused substantial injury to consumers that was not reasonably avoidable by those consumers—who had no meaningful ability to contest or avoid unlawful tariffs at the point of purchase—and the harm to consumers is not outweighed by any countervailing benefit to consumers or competition.

119. Plaintiff and members of the putative class suffered an ascertainable loss of money as a direct result of Nikon's unlawful trade practices, having paid tariff-inflated prices for Nikon products that would not have been imposed absent the unlawful IEEPA tariff regime.

120. Plaintiff and members of the putative Class are entitled to recover their actual damages, statutory damages, attorney fees, and costs as available under the N.Y. Gen. Bus. Law § 349.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B. For an order declaring that Defendant's conduct violates the causes of action

referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive and declaratory relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: August 13, 2026.

Respectfully Submitted,

*/s/ Seth R. Lesser*
Seth R. Lesser
Jessica Rado
**KLAFTER LESSER LLP**
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
seth@klafterlesser.com

Patrick M. Wallace*
Jeremy R. Williams*
**LEE SEGUI PLLC**
421 N. Harrington Street, Suite 460
Raleigh, NC 27603
Phone: 919-421-7784
pwallace@leesegui.com
jwilliams@leesegui.com

*Attorney for Plaintiffs & Proposed Classes*
*Pro hac vice application to be filed